ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

MICHIGAN WELFARE RIGHTS
ORGANIZATION, *et al.*,

    Plaintiffs-Appellees

    v.

DONALD J. TRUMP,

    Defendant-Appellant,

DONALD J. TRUMP FOR PRESIDENT,
INC., *et al.*,

    Defendants-Appellees.

No. 22-7164

---

## PLAINTIFFS-APPELLEES'
## MOTION TO GOVERN FURTHER PROCEEDINGS
## & MOTION FOR SUMMARY AFFIRMANCE

On December 1, 2023, this Court ordered the parties to file motions to govern future proceedings in this appeal following its decision in *Blassingame v. Trump*, No. 22-5069. Order, *Mich. Welfare Rights Org. v. Trump*, No. 22-7164 (D.C. Cir. Dec. 1, 2023), ECF No. 2029513. Because the issue on appeal here was decided in *Blassingame* in accordance with the district court's decision below in this case, Plaintiffs-Appellees hereby request that the Court summarily affirm the district

court's denial of Appellant's absolute immunity from monetary damages, consistent with this Court's decision in *Blassingame*.[1]

This appeal has been held in abeyance pending further order from this Court. Order, *Mich. Welfare Rights Org. v. Trump*, No. 22-7164 (D.C. Cir. Jan. 30, 2023), ECF No. 1983762. This appeal is from a denial of an immunity argument at the motion to dismiss stage that is materially identical to official-act immunity arguments advanced by Appellant Donald J. Trump in *Blassingame* and related cases. *Compare* Trump's Mot. to Dismiss at 16-17, *Mich. Welfare Rights Org. v. Trump*, No. 20-cv-3388 (D.D.C. Feb. 24, 2021), ECF No. 25-1 ("20-cv-3388 Mot. to Dismiss") *with* Trump's Mot. to Dismiss at 7-13, *Blassingame v. Trump*, No. 21-cv-858 (D.D.C. June 24, 2021), ECF No. 10-1 ("21-cv-858 Mot. to Dismiss"); Trump's Mot. to Dismiss at 8-11, *Swalwell v. Trump*, No. 21-cv-586 (D.D.C. May 24, 2021), ECF No. 14-1; Trump's Mot. to Dismiss at 8-11, *Thompson v. Trump*, No. 21-cv-400 (D.D.C. May 26, 2021), ECF No. 22-1.

In the district court in *Blassingame,* Mr. Trump asserted in his motions to dismiss that he was immune from liability for civil damages because his speech and

---

[1] Plaintiffs-Appellees acknowledge that under D.C. Cir. Rule 27(g)(1), dispositive motions must normally be filed within 45 days of the docketing of a case in this Court unless the Court grants a party leave to do so for good cause. Considering that this appeal has been held in abeyance since January 30, 2023, and the Court's on-point decision in *Blassingame*, No. 22-5069, on December 1, 2023, Plaintiffs-Appellees respectfully request leave to file this motion now.

2

behavior on January 6, 2021, was undertaken as part of his official responsibilities as President. 21-cv-858 Mot. to Dismiss at 12. The district court disagreed, determining Mr. Trump's tweets leading up to January 6 and his speech on that day reflected an "electoral purpose, not speech in furtherance of any official duty." *Thompson v. Trump*, 590 F. Supp. 3d 46, 83 (D.D.C. 2022) (denying immunity), *aff'd sub nom. Blassingame v. Trump*, No. 22-5069, __ F.4th __, 2023 WL 8291481 (D.C. Cir. Dec. 1, 2023). Mr. Trump appealed that determination to this Court, and on December 1, 2023, this Court affirmed the ruling below, holding that, at the motion to dismiss stage, allegations of Mr. Trump's comments and behavior surrounding claims of election invalidity related to the 2020 election concerned acts taken in his personal capacity as a candidate, not his official capacity as the President of the United States, and that Mr. Trump was not entitled to official-act immunity. *Blassingame v. Trump*, Case No. 22-5069, __ F.4th __, 2023 WL 8291481, at *1-2 (D.C. Cir. Dec. 1, 2023).

The same determination was made in this case in the court below. Here, Mr. Trump asserted immunity from the election interference claims based on the theory that his actions, including those taken on January 6, were taken as part of his official responsibilities as President. 20-cv-3388  Mot. to Dismiss at 17 ("All of the conduct alleged falls within the outer perimeter of President Trump's official responsibilities as President … [a]s such, this immunity bars Plaintiffs' action for damages against

President Trump."). This position echoes Mr. Trump's argument in *Blassingame*, where Mr. Trump asserted he was entitled to absolute immunity for his acts "engaged in the execution of his duties as President." 21-cv-858 Mot. to Dismiss at 12.

The district court disagreed, determining Mr. Trump's actions were "purely political and therefore well beyond the contours of presidential immunity." *Mich. Welfare Rights Org. v. Trump*, 642 F. Supp. 3d 98, 105 (D.D.C. 2022) (denying immunity)[2] (quoting Pls.' Reply at 4-5, ECF No. 58), *appeal docketed*, No. 22-7164 (D.C. Cir. Dec. 6, 2022). Mr. Trump appealed that determination to this Court, and this case has been held in abeyance while essentially the same issue was being adjudicated in *Blassingame*. In fact, Mr. Trump himself asserted that the immunity issue in this case was the "exact issue" on appeal in *Blassingame*. Mr. Trump's Reply in Support of Mot. to Stay at 9, *Mich. Welfare Rights Org. v. Trump*, No. 20-cv-3388 (D.D.C. Dec. 30, 2022), ECF No. 70.

In *Blassingame*, this Court has now denied Mr. Trump's assertion of official-act immunity from monetary damages at the motion to dismiss stage. *Blassingame*, 2023 WL 8291481 at *1. Because the motion to dismiss posture of this case is the same as *Blassingame*, the claims in each case concern many of the same facts, and

---

[2] Attached as Exhibit 1 in accordance with Fed. R. App. P. 27(a)(2)(b)(iii) and D.C. Cir. Rule 27(g)(2).

the only issue on appeal here is Mr. Trump's official-act immunity from monetary damages, the Court should summarily affirm the decision below and deny Mr. Trump immunity for actions taken in his capacity as a candidate for election, at least at this motion to dismiss stage, consistent with its decision in *Blassingame.*

Alternatively, if the Court requires further briefing, Plaintiffs-Appellees respectfully request the opportunity to submit a more fulsome Motion for Summary Affirmance and an Emergency Motion for Expeditious Consideration in accordance with D.C. Cir. Rule 27(f), as the risk of irreparable harm to the voting rights of Plaintiffs-Appellees increases with each day the 2024 election approaches.

Dated: December 19, 2023

/s/ Samuel Spital

Samuel Spital
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200

*Counsel for Plaintiffs-Appellees*

Respectfully submitted,

/s/ Jason M. Bradford

Jason M. Bradford
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g), counsel hereby certifies that this filing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 942 words, as counted by counsel's word processing system.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in Times New Roman 14-point font.

/s/ Jason M. Bradford

Jason M. Bradford

USCA Case #22-7164      Document #2032330        Filed: 12/19/2023     Page 7 of 29

EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.* <br><br>          Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br>          Defendants. | Civ. Action No. 20-3388 (EGS) |

**MEMORANDUM OPINION AND ORDER**

## I.   Introduction

Plaintiffs Michigan Welfare Rights Organization ("MWRO"), the National Association for the Advancement of Colored People ("NAACP"), Maureen Taylor ("Ms. Taylor"), Nicole Hill ("Ms. Hill"), and Teasha Jones ("Ms. Jones") (collectively "Plaintiffs") bring this case against Defendants the Republican National Committee ("RNC"); Donald J. Trump for President, Inc. (the "Trump Campaign"), and Donald J. Trump ("Former President Trump") (collectively, "Trump Defendants"), alleging violations of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b); and the Ku Klux Klan Act ("KKK Act"), 42 U.S.C. § 1985(3); based on conduct alleged to have occurred throughout the country around the 2020 Presidential Election. *See generally* Amended Complaint

1

("Am. Compl.") ECF No. 8.[1] On April 1, 2022, this Court issued a Memorandum Opinion and Order granting Defendants' Motions to Dismiss as to Plaintiffs' VRA claim, and holding in abeyance the Motions to Dismiss as to Plaintiffs' KKK Act Claim. *See generally* Mem. Op., ECF No. 49, Order, ECF No. 48.

Pending before the Court is Plaintiffs' Motion for Leave to File Second Am. Compl. ("Pls.' Mot."), *see* ECF No. 55; which also includes a request for the Court to reconsider the VRA claim considering Plaintiffs' new allegations. Both the RNC and the Trump Defendants oppose the motion. *See* RNC Opp'n, ECF No. 56; Trump Defs.' Opp'n, ECF No. 57.

Upon consideration of the motion, responses, and the reply thereto, and the applicable law, the Court **GRANTS** Plaintiffs' Motion to Amend, ECF No. 55; and **FINDS AS MOOT** the portions of the RNC's Motion to Dismiss, *see* ECF No. 24; and the Trump Defendants' Motion to Dismiss, *see* ECF No. 25-1; that were held in abeyance.

## II.  Factual and Procedural Background

Plaintiff MWRO is the Michigan state chapter of the National Welfare Rights Union and is based in Detroit, Michigan. *See* Am. Compl., ECF No. 8 ¶ 7. MWRO "conducts voter engagement

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

efforts targeted at low-income voters of color" and has members "who reside in Detroit in Wayne County, Michigan, voted in the November 2020 election, and cast a ballot for President." *Id.* Plaintiffs Maureen Taylor, Nicole L. Hill, and Teasha K. Jones reside in Detroit and cast their votes for President in the 2020 election. *Id.* ¶¶ 8-10. Plaintiff the NAACP is "the nation's largest and oldest civil rights grassroots organization" and "has over 220,000 members nationwide." *Id.* ¶ 12. It has "members across the country who voted in the 2020 election and who plan to vote in future elections, including in Michigan, Wisconsin, Pennsylvania, Georgia, Arizona, and Nevada." *Id.*

Defendant Donald J. Trump was the forty-fifth President of the United States. *Id.* ¶ 13. In November 2020, he was an unsuccessful candidate for re-election to that office. *Id.* He is domiciled in Florida, and was also domiciled there when the events alleged in the Amended Complaint occurred. *See* Trump Defs.' MTD, ECF No. 25-1 at 8. Donald J. Trump for President, Inc. ("Trump Campaign"), is a Virginia corporation with a principal place of business in New York and an office in Virginia. *See id.* The RNC is a national political party with its principal place of business at 310 First Street S.E., Washington D.C. *See* Mot. to Transfer, ECF No. 21 at 7.

On November 20, 2020, Plaintiffs brought suit in this Court alleging: (1) Violation of Section 11(b) of the Voting Rights

3

Act ("VRA"), *see* 52 U.S.C. §10307(b); and (2) Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. §1985(3).[2] *See* Am. Compl., ECF No. 8 ¶¶ 76-85. Plaintiffs assert that Defendants conspired to prevent the counting of legally cast ballots, *see id.* ¶¶ 20, 76-85; and that the objective of Defendants' conspiracy was to intimidate election officials, disenfranchise and overturn the will of voters, and ensure that then-President Trump remained President despite losing the 2020 presidential election, *see, e.g.*, *id.* ¶¶ 35-37.

On April 1, 2022, the Court issued a Memorandum Opinion and Order granting Defendants' Motions to Dismiss Plaintiffs' VRA claim and holding in abeyance the motions as to Plaintiffs' KKK Act Claim. *See generally* Mem. Op., ECF No. 49. Plaintiffs subsequently sought to amend their complaint so as to address the Court's concerns regarding their VRA claim and to add factual allegations regarding conduct by the RNC and the Trump Defendants that occurred or involved evidence that became available after Plaintiffs filed their Amended Complaint on December 21, 2020. Pls.' Mot., ECF No. 55 at 2. The RNC and the Trump Defendants have opposed this motion. *See* RNC Opp'n, ECF No. 56; Trump Defs.' Opp'n, ECF No. 57. Plaintiffs have filed a

---

[2] Since the Court has already issued a Memorandum Opinion as to the Voting Rights Act claim, *see* ECF No. 49; this opinion focuses on the allegations relevant to the conspiracy claim.

4

reply. *See* ECF No. 58. The motion is ripe and ready for adjudication.

## III. Standard of Review

### A. Motion for Leave to Amend a Complaint

Under Federal Rule of Civil Procedure 15(a), the court should "freely give leave" to a party to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the court has sole discretion to grant or deny leave to amend, "[l]eave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); see also *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile ... if the proposed claim would not survive a motion to dismiss."). "The burden is on the defendant to show that leave to file an amended complaint should be denied." *Afram v. United Food & Commercial Workers Unions & Participating Emp'rs Health & Welfare Fund*, 958 F. Supp. 2d 275, 278 (D.D.C. 2013).

5

**B. Subject Matter Jurisdiction**

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by [Article III of the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs,* 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). "There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 182-83 (1936)).

The requirement of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). There are three requirements for standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the

6

> court." Third, it must be "likely," as opposed
> to merely "speculative," that the injury will
> be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560–61 (citation omitted).

In assessing whether a complaint sufficiently alleges subject matter jurisdiction, the Court accepts as true the allegations of the complaint, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); and liberally construes the pleadings such that the plaintiff benefits from all inferences derived from the facts alleged, *Barr v. Clinton,* 370 F. 3d 1196, 1199 (D.C. Cir. 2004).

However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (citations, quotation marks and brackets omitted). Consequently, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.,* if it is immaterial and made solely for the purpose of obtaining jurisdiction or it is wholly insubstantial and frivolous." *Arbaugh,* 546 U.S. 500, 513 n.10 (2006) (citation omitted); *accord Tooley v. Napolitano,* 586 F.3d 1006, 1009 (D.C. Cir. 2009) (citation omitted).

7

## IV.  Analysis

Plaintiffs seek leave to: (1) address the shortcomings in their VRA claim, for which the Court granted Defendants' Motions to Dismiss, *see* Mem. Op., ECF No. 49; and (2) to add factual allegations regarding conduct that occurred or evidence that became available after they filed their Amended Complaint on December 21, 2020. Pls.' Mot., ECF No. 55 at 2. They contend that there is no "sufficient reason" to deny leave to amend because they are "moving within a reasonable time and with proper motivation; they have not previously failed to cure any pleading deficiency identified by this Court; and amendment would not be futile." Pl.'s Mot., ECF No. 55 at 3.

The RNC responds that the motion should be denied on futility grounds because Plaintiffs' amended allegations are insufficient to address the standing deficiencies as to the VRA claim. *See* RNC Opp'n, ECF No. 56 at 1, 6. The Trump Defendants similarly contend that "[n]one of the additional facts or politically charged rhetoric alleged by Plaintiffs changes the legal conclusion at the heart of the Court's holding dismissing their claim under Section 11(b) of the Voting Rights Act: Plaintiffs lack standing to pursue a claim." Trump Defs.' Opp'n, ECF No. 57 at 2. Both oppositions address only Plaintiffs' attempt to address the deficiencies in their VRA claim.

8

## A. The SAC Is Not Futile

Plaintiffs argue that the proposed Second Amended Complaint ("SAC") would not be futile because the additional factual allegations demonstrate that there is a substantial risk that they will suffer future harm caused by Defendants, and thereby have standing for the VRA § 11(b) claim. Pl.'s Mot., ECF No. 55 at 4-5. Plaintiffs assert that Defendants' "illegal attempts to disenfranchise the individual Plaintiffs and the members of the organizational Plaintiffs have continued since Plaintiffs filed their Amended Complaint, and the harms from that conduct are also continuing . . .." *Id*. at 5. The RNC responds that: (1) Plaintiffs have not established a real and impending threat from the RNC; and (2) Plaintiffs provide "no evidence" that the RNC is responsible for the "isolated" actions of state and local officials who are RNC members and therefore fail to meet the redressability prong of standing. RNC Opp'n, ECF No. 56 at 2, 4. The Trump Defendants reiterate that Plaintiffs have presented no evidence of future disenfranchisement or imminent harm. Trump Defs.' Opp'n, ECF No. 57 at 5.[3]

---

[3] The Trump Defendants assert that the RNC's February 2022 resolution censuring Republican legislators Liz Cheney and Adam Kinzinger for their involvement in investigating the January insurrection in which participants used violence and terror to try to prevent Congressional certification of the election results has "no relation" to this case and strays into non-justiciable political questions. *See* Trump Defs.' Opp'n, ECF No. 57 at 6-7. But the Trump Defendants' attempt to recast the issue does not change that the Court is not settling any dispute

9

The Court rejects Defendants' futility arguments, concluding that the allegations in Plaintiffs' SAC meet the bar for standing for the purpose of addressing the Motion to Amend. Before reaching the imminence and redressability components of its standing analysis, the Court considers the threshold issue of immunity, which the Trump Defendants assert is absolute for Former President Trump. *See* Defs.' Mot., ECF No. 57 at 7.

### 1. Former President Trump is Not Absolutely Immune From Damages Liability

The Trump Defendants assert that the SAC fails as to Former President Trump because it is barred by the President's absolute immunity, *see* Trump Defs.' Opp'n, ECF No. 57 at 7; reiterating their earlier argument that Former President Trump is "absolutely immune" from damages liability predicated on acts within the "outer perimeter" of his official responsibility. Trump Defs.' Mo. to Dismiss, ECF No. 25-1 at 19-20. Plaintiffs renew their prior argument that they are pursuing claims against Former President Trump for actions taken in his personal capacity as a *candidate*, not in his official capacity as President. Pls.' Reply, ECF No. 58 at 5-6; Pls.' Mot. to Dismiss Opp'n, ECF No. 35 at 25. The Trump Defendants assert that Former President Trump was "contesting election results so as to

---

between the RNC and its legislators: it is considering the *fact* of the censure resolution as evidence presented by Plaintiff.

10

preserve, protect, and defend the Constitution of the United States." Trump Defs.' MTD Reply, ECF No. 38 at 12.

When defending against actions for damages, the President's privilege is absolute, meaning he has a complete defense entitling him to summary judgment, subject only to the requirement that his actions fall within the outer perimeter of his official duties. *Chastain v. Sundquist*, 833 F.2d 311, 315 (D.C. Cir. 1987). However, immunity does not protect acts that Former President Trump undertook *outside* the outer perimeter of his official duties. *Clinton v. Jones*, 520 U.S. 681, 694-95 (1997) (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 757, 759 (1982)) (finding that the President's "effort to construct an immunity from suit for unofficial acts grounded purely in the identity of his office [was] unsupported by precedent").

The Court agrees with Plaintiffs that Former President Trump's "at-issue conduct is purely political and therefore well beyond the contours of presidential immunity." Pls.' Reply, ECF No. 58 at 5-6. It has long been recognized that political activity necessarily falls outside the scope of the President's official duties. *See*, *e.g.*, *Payment of Expenses Associated with Travel by the President and Vice President*, Justice.Gov (Mar. 24, 1982), https://www.justice.gov/sites/default/files/olc/opinions/1982/03/31/op-olc-v006-p0214_0.pdf at 216-17 (concluding that political activity falls outside the scope of

11

the President's official duties and activities if its primary purpose involves the President's position as the leader of their party). Persuasive authority in this district specifically recognizes that there is no immunity defense for Former President Trump for "unofficial acts" which "entirely concern his efforts to remain in office for a second term." *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at *18 (D.D.C. Feb. 18, 2022); *see also United States v. Chrestman*, 525 F. Supp. 3d 14, 33 (D.D.C. 2021) ("[A] President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government."). The Trump Defendants provide no reason why this case, which relates to some of the same underlying events, warrants a different conclusion.

Further, and as Plaintiffs assert, Former President Trump "does not even attempt to explain how intimidating and coercing election officials, or inciting intimidation and threats against election officials, could possibly constitute executive action in defense of the Constitution, particularly given that his actions targeted *only* officials in areas where he lost." Pls.' MTD Opp'n, ECF No. 35 at 25. "Nor does he offer any reason to believe his efforts to expose 'election fraud' were part of any

executive effort." *Id.* If Former President Trump disrupted the certification of the electoral vote count, as Plaintiffs allege here, such actions would not constitute executive action in defense of the Constitution. For these reasons, the Court concludes that Former President Trump is not immune from monetary damages in this suit. *Chrestman.* 525 F. Supp. 3d at 33.

## 2. The SAC Adequately Alleges Standing

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* An injury in fact must be "concrete and particularized" and "'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court and D.C. Circuit have explained that the imminence requirement is satisfied where there is a "substantial risk" of future harm. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017). Courts in this District have stressed that "substantial risk" is the touchstone for analyzing imminence. *See, e.g.*, *Richardson v. Trump*, 496 F. Supp. 3d 165, 178 (D.D.C. 2020). "[P]ast wrongs" do not

13

"themselves amount" to the kind of "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking only equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)).

Here, Plaintiffs assert that the SAC adds allegations showing that the harm to them is both imminent and ongoing. *See* SAC, ECF No. 155-2 ¶¶ 128-30. Plaintiffs argue that Former President Trump has repeatedly advocated illegal action to overturn the 2020 election. *Id.* ¶¶ 101–108, 112–114. Plaintiffs point to several examples of Former President Trump's ongoing efforts to overturn the results of the 2020 election, including: (1) pressuring the Speaker of the Wisconsin Assembly to nullify the 2020 election results in March 2022, *id.* ¶ 112, which the Speaker is not legally permitted to do; (2) continuing in 2022 to pressure, behind the scenes, Alabama Representative Mo Brooks and other lawmakers to "rescind" the 2020 presidential election results, *id.* ¶ 113, which there is no legal basis for doing; and (3) backing candidates in 2022 elections in order to have a "new Legislature" in Michigan that would, baselessly, try to undermine the 2020 presidential election results, and backing other 2022 candidates because they endorse his false claims that the 2020 presidential election was stolen from him, *id.* ¶ 114.

14

Plaintiffs claim that "the onslaught of threats and intimidation directed at election officials by Defendants and their agents following the 2020 presidential election" "have led both to an exodus of election officials as they retire early or simply quit and to fears among election officials that political leaders will interfere with how they do their jobs in future elections, including by pressuring those officials to certify election results in favor of a specific candidate or party." *Id.* ¶ 35. In support of their argument that harm is ongoing and imminent, Plaintiffs also allege that "[o]ne in six election officials has experienced job-related threats, and thirty percent of officials know of one or more election workers who have already left their jobs because of the threats and intimidation." *Id.* ¶ 36.

The Trump Defendants respond that Plaintiffs fail to show any "substantial risk" that their votes will not be counted or that Plaintiffs will be personally injured due to the actions of Defendants in the future. Trump Defs.' Opp'n, ECF No. 57 at 5. They suggest to this Court that "Plaintiffs are reiterating a tired trope that any effort to ensure the integrity of the election is an illegal attempt to suppress legitimate votes." *Id.* The Court disagrees.

As a fellow Judge in this district previously observed as to the "integrity" of Former President Trump's efforts:

15

> "[Former President Trump] recited a litany of false claims about the ways in which the election had been stolen in Pennsylvania (e.g., over 200,000 more ballots cast than voters), Wisconsin (e.g., postal service workers were told to backdate 100,000 ballots), Georgia (e.g., election officials pulled "boxes ... and suitcases of ballots out from under a table"), Arizona (e.g., 36,000 ballots were cast by noncitizens), Nevada (e.g., more than 42,000 double votes), and Michigan (e.g., thousands and thousands of ballots were improperly backdated).

*Trump*, 2022 WL 503384, at *43. With no evidence of voter fraud and based entirely on his own false claims narrative, Former President Trump then stated:

> "If we allow this group of people to illegally take over our country, because it's illegal when the votes are illegal, when the way they got there is illegal, when the States that vote are given false and fraudulent information . . . the [immigrant] caravans are forming again. They want to come in again and rip off our country. Can't let it happen."

*Trump*, 2022 WL 503384, at *43. He then told his supporters "you're allowed to go by very different rules," and to march on the Capitol, "fight like hell," and "take back our country," *see id.* at *1, *5, *32. Yet the Trump Defendants would have the Court disregard evidence and reason and credit the view that Former President Trump's efforts were to prevent the counting of "*illegal* votes, and implementing measure[s] to prevent *illegal* votes do [sic] nothing to impact valid, legal votes." *Id*. The Court declines to do so.

16

The Trump Defendants also insist that "[Former President Trump's] discussions with election officials and state government leaders" do not impact "valid, legal votes" and that "President's Trump encouragement of poll watchers does not mean that Plaintiffs will be prevented from voting." Trump Defs.' Opp'n, ECF No. 57 at 5-6. Plaintiffs allege that Former President Trump continues to spread false claims about the 2022 elections and continues to attempt to pressure officials into nullifying the election results: Plaintiffs extensively allege the efforts of Former President Trump and his allies as recently as March 2022 to get state officials to overturn the election results, *see* SAC, ECF No. 55-2 ¶¶ 112-113; to endorse and provide financial support to candidates for office who supported his false claims of election fraud, *see id.* ¶ 114; all while fundraising for the 2024 Presidential Election, *see id.* ¶ 115. These allegations are perhaps the opposite of what the Trump Defendants term "vague suggestions of fear or intimidation." Trump Defs. Mot., ECF No. 57 at 6.

Given that the individual Plaintiffs live in Michigan, a state where Plaintiffs extensively allege Defendants have repeatedly undertaken efforts to disenfranchise voters through targeted harassment, intimidation, and efforts to prevent the complete counting and certification of validly cast ballots, *see* SAC, ECF No. 55-2 ¶¶ 8-10, 25, 34, 39-41; the Court concludes

17

USCA Case #22-7164   Document #2032330       Filed: 12/19/2023     Page 24 of 29

that Plaintiffs' allegations support severe, substantial harm from Former President Trump's ongoing and continued efforts to intimidate officials, spread false claims of fraud, and imperil the right to vote. The Court is also cognizant that the individual Plaintiffs are Black voters who are particularly targeted by Former President Trump's baseless allegations of election fraud. SAC ¶¶ 8–10, 25, 46. The Court concludes that Plaintiffs have adequately alleged, for the purposes of the Motion to Amend, that the Trump Defendants not only caused great harm to Plaintiffs in the past but also pose a very substantial risk in the future to Plaintiffs' fundamental right to vote. For all these reasons, the SAC is not futile.

As to the RNC specifically, Plaintiffs allege that RNC Chairwoman Ronna McDaniel has publicly stated there were "lots of problems with the election," described the insurrection as "legitimate political discourse," and criticized the investigation as "persecution of ordinary citizens." *Id.* ¶ 116. Plaintiffs point out that on February 4, 2022, the RNC passed a resolution censuring Republican legislators Liz Cheney and Adam Kinzinger for their involvement in investigating the January 6 insurrection in which participants used violence and terror to try to prevent Congressional certification of the election results. *Id.*

Plaintiffs further allege that the RNC and state Republican organizations are undertaking large-scale "election integrity" efforts, spearheaded by individuals who have publicly encouraged election interference and intimidation during the 2020 election results, to interfere with voting and vote counting in 2022. *Id.* ¶¶ 117–119. As examples, Plaintiffs state that: (1) Michigan Republican Party Co-Chair and RNC member Meshawn Maddock, a so-called "alternate elector" who participated in the coordinated effort to undermine Michigan's (and other states') 2020 election certification by submitting false election "certifications" purporting to show that Former President Trump won the election, is now involved in recruiting thousands of poll watchers to "flood the system" in forthcoming elections, *id.* ¶ 119; (2) in Texas, state Republican officials have administered virtual trainings likely to encourage poll watchers to assume that votes cast by voters of color are presumptively illegitimate by instructing those poll watchers that "fraud is occurring" in "densely populated, largely Black, Latino, and Asian neighborhoods." *id.*; (3) election watchdog groups and legal experts warn that the RNC's efforts to recruit and install partisans who believe Defendants' false election fraud narrative in positions that should be occupied by unbiased officials, thus risking "chaos" in jurisdictions with large numbers of voters of color, including Detroit, *id.* ¶ 118.

The RNC responds that the censure of two of its officials is backward looking and related to "specific and unrelated actions by the Committee." RNC Opp'n, ECF No. 56 at 2-3. It similarly states that Chairwoman Ronna McDaniel's statements are backward looking. *Id.* at 3. The RNC also contends that the subpoenas issued by the House Select investigating January 6 to several individuals who were listed as potential alternate electors and happen to be current or former members of the RNC are past wrongs "not attributable to the RNC." *Id.* As to the RNC's alleged efforts to recruit and train poll watchers, *see* SAC ¶¶ 117-119; the RNC concedes this is future looking but states that Plaintiffs fail to connect these efforts to "impending" future harm without showing that they "will" happen. RNC Opp'n, ECF No. 56 at 4. As for activity by state and local Republican officials, the RNC seeks to absolve itself of all responsibility of its members' conduct. *Id.* Essentially, the RNC invites this Court to construe every challenged action by an RNC official as not attributable to the RNC, as a "past wrong," and if not, as a future harm that Plaintiffs have not shown *will* happen. The Court declines to do so.

As a threshold matter, the Court notes that the RNC's argument that the political behaviors of its own officials are not attributable to it are not cognizable at this stage where the motion to dismiss was granted on standing grounds alone, and

20

the sole inquiry is whether Plaintiffs can plausibly allege their Section 11(b) claim. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 26-27 (D.D.C. 2020) (noting that in ruling on a motion to dismiss, "a court must assume the truth of all material factual allegations" and "grant[] plaintiff the benefit of all inferences") (citations omitted). To the extent that the RNC contests these allegations, it is premature for the Court to consider the RNC's arguments now, given that the Plaintiffs' plead that the conduct at issue was conducted by RNC officials.

As to a "substantial risk" of future harm, Plaintiffs' allegations more than suffice. First, quite apart from the RNC's cherrypicked allegations, Plaintiffs make several allegations as to ongoing conduct that poses an imminent threat. *See* SAC, ECF No. 55-2 ¶¶ 116-119. If these allegations were, as the RNC attempts to portray them, simply that the RNC was recruiting poll watchers, *see* RNC's Opp'n, ECF No. 56 at 4; they would be insufficient. However, Plaintiffs allege something else entirely: they allege, among other things, that the RNC's recruitment is "spearheaded by individuals who publicly encouraged interference and intimidation of officials involved with the certification," SAC, ECF No. 55-2 ¶ 117; that these "trainings continue the militaristic and adversarial character of the 2020 efforts and frequently refer to the need to create

an 'army of volunteers,' resembling the rhetoric of the 2020 intimidation efforts," *id.* ¶ 118; and that state Republican officials "have administered virtual trainings likely to encourage poll watchers to assume that votes cast by voters of color are presumptively illegitimate by instructing those poll watchers that 'fraud is occurring' in 'densely populated,' largely Black, Latino, and Asian neighborhoods," *id.* ¶ 119. Second, the Court is cognizant that for something to count as a valid allegation or piece of evidence, it *must already have happened.* That does alone not make it a past wrong with no bearing on the future. The question for the Court is whether there is further *imminent* harm posed by the past conduct. The Court's concern for imminence is not whether a future harm *will* happen. The relevant inquiry is whether there is a "substantial risk" of future harm. *Attias*, 865 F.3d at 627. Past conduct can indeed weigh in on the substantial risk of future harm. *See, e.g.*, *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (explaining that "[p]ast wrongs may serve as evidence bearing on" standing to enjoin prospective harm) (quotation marks and citation omitted) (alteration in original). This is particularly critical here, given Plaintiffs' allegations, treated as true at this stage, that Defendants' past conduct "seeks to provide a veneer of legitimacy for future election intimidation efforts—which only enhances the substantial risk of recurrence." Pls.'

22

Reply, ECF No. 58 at 4. The Court concludes that Plaintiffs' SAC sufficiently alleges a claim for equitable relief against the RNC under the VRA for the purpose of addressing the Motion to Dismiss.

## V.    Conclusion and Order

For the foregoing reasons, the Court hereby

**GRANTS** Plaintiff's Motion to File Second Amended Complaint, ECF No. 55; and

**FINDS AS MOOT** the claim held in abeyance in RNC's Motion to Dismiss, ECF No. 24; and the Trump Defendants' Motion to Dismiss, ECF No. 25-1.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**November 28, 2022**